No. 25-6173

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

CALIFORNIA POLICY CENTER, INC.,
*Plaintiff-Appellant*,

v.

LILIA GARCIA-BROWER, IN HER OFFICIAL CAPACITY AS THE LABOR
COMMISSIONER,
*Defendant-Appellee*.

**On Appeal from the United States District Court
for the Central District of California**
No. 8:25-cv-00271-MWC-SK
Honorable Michelle Williams Court

**DEFENDANT'S ANSWERING BRIEF ON THE MERITS**

ROB BONTA
 *Attorney General of California*
THOMAS S. PATTERSON
 *Senior Assistant Attorney General*
ANYA M. BINSACCA
 *Supervising Deputy Attorney General*
KRISTIN A. LISKA
 *Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3916
Fax: (415) 703-5480
Kristin.Liska@doj.ca.gov
*Attorneys for Defendant-Appellee*

March 5, 2026

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................1

Statement of Jurisdiction................................................................................4

Statement of Issues.........................................................................................5

Statement Regarding Addendum .....................................................................5

Statement of the Case.....................................................................................5

    A.    Senate Bill 399 ................................................................................5

    B.    Procedural History............................................................................9

Standard of Review .......................................................................................12

Summary of Argument ..................................................................................13

Argument......................................................................................................15

I.    The Lower Court Properly Dismissed the Case Because
Plaintiff Has Not Established Standing ........................................................15

II.    In the Alternative, the Decision Below Can Be Affirmed for
Failure to State a Claim ..............................................................................27

    A.    SB 399 Is Not Unconstitutional Under the First
Amendment ..................................................................................27

        1.    The First Amendment Does Not Include the Right
to Compel an Audience to Listen................................................28

        2.    SB 399 Is Not Subject to First Amendment
Scrutiny ..................................................................................29

        3.    Even if SB 399 Does Regulate Speech, It Is
Permissible as Protection of an Unwilling
Audience ..................................................................................34

Conclusion ...................................................................................................36

Statement of Related Cases............................................................................37

Certificate of Compliance ..............................................................................38

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Encore v. Fontes*
152 F.4th 1097 (9th Cir. 2025) .......................................................................26

*Am. Freedom Def. Initiative v. King County*
796 F.3d 1165 (9th Cir. 2015) ....................................................................34, 35

*Applied Underwriters, Inc. v. Lichtenegger*
913 F.3d 884 (9th Cir. 2019) ......................................................................13, 14

*Arcara v. Cloud Books, Inc.*
478 U.S. 697 (1986)..........................................................................................32

*Ashcroft v. ACLU*
535 U.S. 564 (2002)..........................................................................................28

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..........................................................................................12

*California Pro-Life Council, Inc. v. Getman*
328 F.3d 1088 (9th Cir. 2003) ....................................................................26, 27

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*
447 U.S. 530 (1980)..........................................................................................28

*Credit Suisse First Boston Corp. v. Grunwald*
400 F.3d 1119 (9th Cir. 2005) ....................................................................19, 24

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*
196 F.3d 958 (9th Cir. 1999) ............................................................................35

*Erznoznik v. City of Jacksonville*
422 U.S. 205 (1975)..........................................................................................34

*Galena v. Leone*
638 F.3d 186 (3d Cir. 2011) .............................................................................28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*
452 U.S. 640 (1981)................................................................28

*Hill v. Colorado*
530 U.S. 703 (2000).................................................29, 34, 35, 36

*HomeAway.com, Inc. v. City of Santa Monica*
918 F.3d 676 (9th Cir. 2019) .....................................................32

*Honeyfund.com, Inc. v. Governor*
94 F.4th 1272 (11th Cir. 2024) ..................................................33

*Kumar v. Koester*
131 F.4th 746 (9th Cir. 2025) ....................................................16

*Laird v. Tatum*
408 U.S. 1 (1972)....................................................................26

*Lehman v. City of Shaker Heights*
418 U.S. 298 (1974).............................................................34, 35

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2024) ...................................................13

*Lopez v. Candaele*
630 F.3d 775 (9th Cir. 2010) .....................................................26

*Madsen v. Women's Health Center, Inc.*
512 U.S. 753 (1994)................................................................35

*Martin v. Parrish*
805 F.2d 583 (5th Cir. 1986) .....................................................35

*McTernan v. City of York*
564 F.3d 636 (3d Cir. 2009) ......................................................29

*Neville v. County of Sonoma*
206 Cal. App. 4th 61 (2012) ..................................................11, 23

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Olmstead v. United States*
277 U.S. 438 (1928)..................................................................................29

*Peace River LLC v. Bonta*
93 F.4th 482 (9th Cir. 2024) ....................................................................16

*People v. Blackburn*
61 Cal. 4th 1113 (2015) ...........................................................................19

*People v. Knowles*
105 Cal. App. 5th 757 (2024) ..............................................................22, 23

*Reynosa v. Superior Ct.*
101 Cal. App. 5th 967 (2024) ...................................................................11

*Rowan v. U.S. Post Office Dep't*
397 U.S. 728 (1970)..................................................................................29

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*
547 U.S. 47 (2006)..............................................................................31, 33

*Sec. Pac. Nat'l Bank v. Wozab*
51 Cal. 3d 991 (1990) ...............................................................................19

*Sign for Jesus v. Town of Pembroke*
977 F.3d 93 (1st Cir. 2020)........................................................................28

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016)..............................................................................15, 16

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ..................................................................12

*State Farm Mut. Auto. Ins. Co. v. Garamendi*
32 Cal. 4th 1029 (2004) ............................................................................19

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014)..................................................................................16

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*
  607 F.2d 1043 (2d Cir. 1979) ...............................................................35

*Turner Broad. Sys., Inc. v. FCC*
  512 U.S. 622 (1994)...............................................................................28

*United States v. Campbell*
  291 F.3d 1169 (9th Cir. 2002) ..............................................................27

*United States v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) ................................................................13

*United States v. Waggy*
  936 F.3d 1014 (9th Cir. 2019) ..............................................................28

*Walker v. Superior Court*
  47 Cal. 3d 112 (1988) .....................................................................22, 23

*Wasatch Prop. Mgmt. v. Degrate*
  35 Cal. 4th 1111 (2005) .........................................................................20

*Wisconsin v. Mitchell*
  508 U.S. 476 (1993)...............................................................................33

STATUTES

United States Code, Title 5
  § 2302(b)(8) ...........................................................................................30

United States Code, Title 18
  § 1514A(a) .............................................................................................30

United States Code, Title 28
  § 1291......................................................................................................4
  § 1331......................................................................................................4

# TABLE OF AUTHORITIES
## (continued)

**Page**

United States Code, Title 42
§ 2000e-1(a)......................................................................................24
§ 2000e-2(a)(1) .................................................................................30

California Government Code
§ 12926(d).........................................................................................24

California Labor Code
§ 98.6(d).............................................................................................24
§ 1137(b)(3) .........................................................................................7
§ 1137(b)(4) .........................................................................................7
§ 1137(c) ........................................................................................7, 30
§ 1137(e) ..............................................................................................9
§ 1137(f)(1).........................................................................................9
§ 1137(g)(1) .........................................................................................7
§ 1137(g)(2) ..........................................................................7, 14, 17
§ 1137(g)(3) .........................................................................................8
§ 1137(g)(4) .........................................................................................8
§ 1137(h)(1) .................................................................................9, 24
§ 1137(h)(2) .....................................................................9, 10, 14, 18
§ 1137(h)(3) .........................................................................................9
§ 1137(h)(4) .........................................................................................9
§ 1137(h)(5) .........................................................................................8
§ 1137(h)(6) .........................................................................................9
§ 1137(i)...............................................................................................9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Article III ..........................................................................................15
First Amendment ......................................................................*passim*

vi

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

COURT RULES

Federal Rules of Civil Procedure

Rule 12(b)(6).............................................................................13, 14
Rule 41(b) ..........................................................................4, 13, 14, 36

OTHER AUTHORITIES

*Political*, Black's Law Dictionary (12th ed. 2024)....................................20

"*Political*," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/political ....................................................20

Sasha Ingber, *Construction Worker Sues Company, Says He Was Fired for Not Attending Bible Study*, NPR.com (Aug. 30, 2018), https://www.npr.org/2018/08/30/643341736/construction-worker-sues-company-says-he-was-fired-for-not-attending-bible-study ........................1

Sarah Westwood & Yon Pomrenze, *Workers Had 3 Options: Attend Trump's Speech, Use Paid Time Off or Receive No Pay*, CNN.com (Aug. 17, 2019), https://www.cnn.com/2019/08/17/politics/workers-trump-speech-attend-pto-no-pay/index.html ...............................................................1

Serena Sonoma, *Shell Workers Forced to Attend Trump Rally or Lose Pay*, Out Magazine (Aug. 18, 2019), https://www.out.com/news/2019/8/18/shell-union-workers-forced-attend-trump-rally-or-lose-pay..............................................................1

Spencer Woodman, *Office Politics*, Slate (Oct. 15, 2014), https://slate.com/news-and-politics/2014/10/bipac-how-the-business-industry-political-action-committee-teaches-corporate-america-to-influence-how-its-employees-vote.html.............................................2

**INTRODUCTION**

In 2019, then-presidential candidate Donald Trump held a rally at a petrochemical plant in Pennsylvania. Workers at the plant were given a choice: attend the rally, use their own paid leave not to attend, or have their pay docked for that day.[1] Those who did not attend the rally would also lose the opportunity to receive the maximum overtime pay for the week.[2] Those who did attend the rally were told they could not protest, yell, shout, or engage in any "resistance" behavior during the rally.[3] This 2019 rally is just one of many examples of a "captive audience" meeting—a meeting unrelated to the employees' job duties that an employer requires employees to attend. Other examples include an employee in Oregon who was allegedly fired from his job for refusing to attend a weekly Bible study,[4] and construction workers at an Alaska oil plant who were called into a

---

[1] *See, e.g.*, Sarah Westwood & Yon Pomrenze, *Workers Had 3 Options: Attend Trump's Speech, Use Paid Time Off or Receive No Pay*, CNN.com (Aug. 17, 2019), https://www.cnn.com/2019/08/17/politics/workers-trump-speech-attend-pto-no-pay/index.html (last accessed March 5, 2026); Serena Sonoma, *Shell Workers Forced to Attend Trump Rally or Lose Pay*, Out Magazine (Aug. 18, 2019), https://www.out.com/news/2019/8/18/shell-union-workers-forced-attend-trump-rally-or-lose-pay (last accessed March 5, 2026).

[2] *Id.*

[3] *Id.*

[4] Sasha Ingber, *Construction Worker Sues Company, Says He Was Fired for Not Attending Bible Study*, NPR.com (Aug. 30, 2018), https://www.npr.org/2018/08/30/643341736/construction-worker-sues-company-says-he-was-fired-for-not-attending-bible-study (last accessed March 5, 2026).

1

purported safety meeting and instead lectured about how to vote on an upcoming ballot measure about tax cuts for the oil industry.[5]

These captive audience meetings raise concerns about the freedom and expressive rights of employees. Employers exercise a great deal of power over their employees through control over employees' economic wellbeing—especially in "at will" employment situations where an employee can be fired with or without cause for any lawful reason. Employers can leverage this power to force employees to listen to religious sermons or political lectures—which touch on matters at the core of one's identity and beliefs. And employees may feel compelled to listen to or even voice agreement with their employer lest they suffer economic penalties or other retaliation on the job.

Given the concerns for employees' autonomy and freedom of conscience raised by captive audience meetings, the California Legislature enacted Senate Bill 399 (SB 399). The statute added a section to the California Labor Code that prohibits employers from subjecting or threatening to subject an employee to an adverse employment action because the employee declines to participate in a meeting or listen to communications about the employer's opinion on political or

---

[5] Spencer Woodman, *Office Politics*, Slate (Oct. 15, 2014), https://slate.com/news-and-politics/2014/10/bipac-how-the-business-industry-political-action-committee-teaches-corporate-america-to-influence-how-its-employees-vote.html (last accessed March 5, 2026).

religious matters unrelated to the employee's job duties. To be clear, the bill does not limit an employer's ability to hold meetings and communicate their opinion on religious, political, or other matters with employees willing to listen, nor does it impose sanctions on employers for doing so. Employers are simply prohibited from punishing employees who choose not to attend meetings or receive communications that are unrelated to their job duties.

Plaintiff California Policy Center is a nonprofit organization engaged in policy research, education, and advocacy work. It brought suit against California Labor Commissioner Lilia García-Brower challenging SB 399, contending the statute violates its First Amendment rights. The lower court, however, granted defendant's motion to dismiss, holding plaintiff lacked standing to bring this pre-enforcement challenge. That ruling was correct. Plaintiff's allegations regarding the required meetings it wishes to hold implicate two of the exemptions in SB 399: an exemption for employer communications regarding information needed for employees to perform their work duties and an exemption for political organizations communicating with employees about the organization's political tenets and positions. Thus, plaintiff has not established that it intends to engage in a course of conduct within the scope of SB 399 and that it faces a realistic threat of prosecution thereunder.

3

In the alternative, this Court should affirm the lower court's grant of defendant's motion to dismiss because plaintiff has failed to allege that SB 399 violates the First Amendment. SB 399 does not regulate or prohibit employer speech; rather, it solely prohibits an employer from sanctioning an employee for refusing to listen to said speech. Employers have no right under the First Amendment to compel employees to listen to unwanted speech unrelated to their job duties. Because SB 399 does not intrude on employers' free speech, it is constitutional under the First Amendment. This Court should thus affirm the lower court's grant of defendant's motion to dismiss.

## STATEMENT OF JURISDICTION

The lower court granted defendant's motion to dismiss with leave to amend on June 24, 2025. ER-8. It entered a subsequent order on July 15, 2025, directing plaintiff to file an amended complaint by July 29, 2025, and stating the case would be dismissed with prejudice if plaintiff failed to do so. ER-34. On July 31, 2025, the lower court entered an order dismissing the action with prejudice under Federal Rule of Civil Procedure 41(b). ER-7. Plaintiff filed a motion for reconsideration on August 1, 2025. ER-26. The lower court denied the motion for reconsideration on September 9, 2025. ER-5. Plaintiff filed a timely notice of appeal on September 29, 2025. ER-92. The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

4

## STATEMENT OF ISSUES

1.      Has plaintiff established standing for this pre-enforcement action when the alleged required meetings it wishes to hold implicate two exemptions within SB 399?

2.      Has plaintiff alleged a viable claim that SB 399, which does not restrict employer speech and only prevents employers from compelling employees to listen to unwanted speech, violates the First Amendment?

## STATEMENT REGARDING ADDENDUM

All applicable statutes are contained in the addendum to Plaintiff-Appellant's Opening Brief.

## STATEMENT OF THE CASE

### A.   Senate Bill 399

The California Legislature enacted Senate Bill 399 in response to concerns about captive audience meetings—meetings that are unrelated to an employee's job duties but that employers require employees to attend at risk of adverse employment action.  As the author of the bill explained, "[i]n most workplaces, workers are 'at will' and can be fired at any time for almost any reason."  SER-11.  The "tremendous power" employers hold over their employees raises concerns about employers "pressur[ing] workers to do what they say."  *Id*.; *see also* SER-47 ("Due to their control over elements of the workplace such as an employee's pay

5

and benefits, employers enjoy outsized influence on their employees' daily lives."); SER-61 ("The unequal power dynamic between an employer and its employees creates a setting ripe for intimidation. Some workers may feel compelled to adopt an employer's view on a political matter because 'people need their jobs.'" (citation omitted)). One example of employers exercising this influence over employees, the legislative history notes, is captive audience meetings that "are mandatory," where "workers are not permitted to leave or speak out." SER-11. Employers use such meetings to "attempt to coerce workers into voting for the employer's preferred candidate or adhering to their religious or political ideological beliefs." *Id.*

SB 399 was animated by the belief that "[n]o worker should be subject to forced indoctrination by their employer on politics, religion, or for exercising their protected rights on the job." SER-11. The bill "promotes workers' rights, especially those of marginalized communities, by protecting their right to advocate for themselves and opt out of conversations about politics or religion that have nothing to do with their ability to properly execute their job duties." SER-37. Ensuring employees have "the choice to listen to the political or religious views of their employers" thus "ensur[es] that the most marginalized workers are not taken advantage of." *Id.*

Under SB 399, an employer "shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer. . . , the purpose of which is to communicate the employer's opinion about religious or political matters." Cal. Labor Code § 1137(c). The statute defines "political matters" as "matters relating to elections for political office, political parties, legislation, regulation, and the decision to join or support any political party or political or labor organization." *Id.* § 1137(b)(3). It defines "religious matters" as "matters relating to religious affiliation and practice or the decision to join or support any religious organization or association." *Id.* § 1137(b)(4).

SB 399's prohibition is subject to a handful of exceptions. First, SB 399 clarifies that it does not impede an employer from requiring that employees receive information related to their job duties. In particular, SB 399 does not prohibit an employer from requiring that employees receive "any information that the employer is required by law to communicate, but only to the extent of that legal requirement" or "any information that is necessary for those employees to perform their job duties." Cal. Labor Code § 1137(g)(1), (2). Nor does SB 399 prohibit "[a]n employer requiring employees to undergo training to comply with the

employer's legal obligations, including obligations under civil rights laws and occupational safety and health laws." *Id.* § 1137(h)(5). SB 399 also does not prohibit institutions of higher learning from requiring that their employees participate in meetings or receive information that "are part of coursework, any symposia, or an academic program at that institution." *Id.* § 1137(g)(3). Finally, SB 399 does not prohibit employers that are public entities from requiring that employees receive "any information related to a policy of the public entity or any law or regulation that the public entity is responsible for administering." *Id.* § 1137(g)(4).

Second, SB 399 includes exemptions for situations that do not implicate the Legislature's concerns over coercion that are present in the typical captive audience scenario. Specifically, SB 399 provides exemptions for: (1) religious entities exempt from specified other state and federal laws requiring "employees who perform work connected with the activities undertaken by" the religious entity to attend a meeting or receive communications involving the employer's "speech on religious matters," (2) "[a] political organization or party requiring its employees to attend an employer-sponsored meeting or to participate in any communications . . . the purpose of which is to communicate the employer's political tenets or purposes," (3) "[a]n educational institution requiring a student or instructor to attend lectures on political or religious matters that are part of the

8

regular coursework at the institution," (4) "[a] nonprofit, tax-exempt training program requiring a student or instructor to attend classroom instruction, complete fieldwork, or perform community service hours on political or religious matters as it relates to the mission of the training program or sponsor," and (5) "[a] public employer holding a new employee orientation" required under state law. Cal. Labor Code § 1137(h)(1)-(4), (h)(6).

The California Labor Commissioner is authorized to enforce SB 399, "including investigating an alleged violation, and ordering appropriate temporary relief to mitigate a violation or maintain the status quo pending the completion of a full investigation or hearing." Cal. Labor Code § 1137(e). Additionally, "any employee who has suffered a violation" may bring a civil action for damages. *Id.* § 1137(f)(1). Finally, SB 399 contains a severability clause. *Id.* § 1137(i).

## B.    Procedural History

Plaintiff California Policy Center is a nonprofit organization "with a mission to secure a more prosperous future for all Californians." ER-81. To achieve this mission, it "engages in research and communication related to public policy, primarily focused on the areas of education reform, workplace freedom, government transparency, and governance." *Id.*; *see also* ER-86. Prior to the enactment of SB 399, plaintiff "regularly conducted staff meetings at which the organization's views on issues of legislation, regulation, and the decision to join a

9

labor union, among other things, were discussed." ER-81; *see also* ER-86. Plaintiff believes that these meetings are "important for [its] functioning," "improve staff morale and team cohesion," and "enable staffers not working on a specific policy-related matter to express their ideas or new perspective on that matter." ER-87. Following the passage of SB 399, plaintiff filed suit against Labor Commissioner Lilia García-Brower, in her official capacity, contending that SB 399 is a violation of the First Amendment because it "regulates speech based on its content." ER-88. Upon filing suit, plaintiff also filed a motion for a preliminary injunction. ER-117. While the motion for a preliminary injunction remained pending, defendant filed a motion to dismiss. ER-35.

The district court granted the motion to dismiss and vacated the motion for a preliminary injunction in light of the dismissal. ER-19. It held that "Plaintiff lacks standing because of the political-organization exemption and any challenge related to topics that are not pertinent to Plaintiff's tenets or purposes are not ripe for review." ER-14. The lower court first noted that SB 399 "exempts a 'political organization'" that requires employees attend meetings or receive communications "'the purpose of which is to communicate the employer's political tenets or purposes.'" *Id.* (quoting Cal. Labor Code § 1137(h)(2)). Given that "[n]either the Act nor the Labor Code includes a specific definition of 'political organization,'" the lower court stated that it would "'turn to dictionaries to look for a word's usual,

10

ordinary meaning.'" *Id.* (quoting *Reynosa v. Superior Ct.*, 101 Cal. App. 5th 967, 986 (2024)).

The lower court then rejected plaintiff's argument that it should look to statutory definitions of "political organization" from the Revenue and Tax Code, the Education Code, or the Code of Judicial Ethics instead of the plain meaning definition, because "[t]hose areas of law do not relate to the Act." ER-16 (citing, *inter alia*, *Neville v. County of Sonoma*, 206 Cal. App. 4th 61, 76 (2012)). The lower court recognized that "[w]hile courts may turn to other statutes for guidance to understand the meaning of an undefined term, statutory definitions between differing statutes are not always interchangeable." ER-17. Because SB 399 "is vastly different from the areas of California law that Plaintiff highlights," the lower court held it would instead "apply[] the usual, ordinary meaning of 'political organization'" to interpret SB 399. *Id.*

After consulting dictionary definitions of "political," the lower court held that the meetings plaintiff wishes to require employees to attend involve topics that are "squarely 'political' and relate to Plaintiff's 'political tenets and purposes.'" ER-15. As a result, "Plaintiff's conduct is not proscribed by the Act (nor is it even arguably proscribed) and thus the injury-in-fact requirement is not met." ER-17. The lower court dismissed the case, but granted plaintiff leave to amend. ER-19.

11

Three weeks later, the lower court entered a further order stating that plaintiff "must file any amended complaint" within the next fourteen days, and that "[f]ailure to file an amended complaint by that date will result in the dismissal of this action with prejudice." ER-34. When plaintiff did not file an amended complaint by the specified date, the lower court dismissed the action "for lack of prosecution and failure to follow the Court's Orders." ER-7. Plaintiff immediately filed a motion for reconsideration, ER-23, on which defendant took no position, ER-21. The lower court denied the motion, noting that plaintiff "failed to timely" notify the court that it did not intend to amend its complaint. ER-5. It held that "[p]laintiff's failure to respond" to the order setting a deadline to file an amended complaint "constitutes a failure to prosecute and failure to follow a Court order." *Id.* Following the denial of the motion for reconsideration, plaintiff filed a timely appeal.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal of a complaint de novo. *E.g.*, *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.*

12

In ruling on a motion to dismiss, the court may consider documents referenced in a complaint as well as matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Where, as here, a defendant raises a facial challenge to standing—contending that the allegations in the complaint, if taken to be true, do not establish standing—a court resolves the motion as it would under Rule 12(b)(6): "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2024).

## SUMMARY OF ARGUMENT

Plaintiff contends that the lower court abused its discretion in dismissing this action under Rule 41(b) for failure to prosecute. Defendant takes no position on this issue. If this Court concludes the lower court did abuse its discretion, then this Court should proceed to review the ruling on defendant's motion to dismiss. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 892 (9th Cir. 2019). As in *Applied Underwriters*, following remand "the district court would presumably either again dismiss Plaintiff's complaint . . . or again grant Plaintiff leave to amend—an opportunity of which Plaintiff would not avail itself, given its stated desire to appeal the district court's original Rule 12(b)(6) dismissal." *Id.* Since remand would "require the parties to engage in additional and redundant briefing, and would add years to their litigation," this Court should "instead proceed with

13

analysis of the district court's dismissal pursuant to Rule 12(b)(6)" if it concludes the dismissal under Rule 41(b) was an abuse of discretion. *Id.*

The lower court properly granted defendant's motion to dismiss because plaintiff has not established standing for its pre-enforcement challenge to SB 399. Plaintiff has not alleged that it intends to engage in a course of conduct within the scope of SB 399 because the meetings that it wishes to require employees attend implicate two of the exemptions in SB 399. First, these meetings implicate the job duties exemption, which allows an employer to require employees receive information that is necessary for their job duties. *See* Cal. Labor Code § 1137(g)(2). Plaintiff has stated that the required meetings it wishes to hold are "important for [its] functioning" and assist in the development of its policy-related work. ER-87. Such meetings at least implicate the job-duties exemption.

Plaintiff's desired mandatory meetings also implicate the political-organization exemption in SB 399, which permits a political organization to require employees attend meetings or receive communications about the employer's political tenets or purposes. *See* Cal. Labor Code § 1137(h)(2). At the required meetings plaintiff wants to hold, it intends to discuss political topics that relate to its policy and advocacy work. *Compare* SER-81, SER-86 (listing areas plaintiff is engaged in), *with* SER-86 (listing topics plaintiff has discussed at meetings). Because plaintiff only wishes to require employees attend meetings

14

that implicate two of the exemptions in SB 399, it has not adequately alleged standing for this pre-enforcement challenge to SB 399.

In the alternative, the lower court's dismissal can be affirmed because plaintiff has failed to state a claim upon which relief can be granted. SB 399 is constitutional under the First Amendment. While the First Amendment protects the right to speak, it does not provide a right to compel others to listen to that speech. SB 399 does not require or prohibit any speech, but rather solely prevents an employer from punishing or retaliating against an employee who declines to listen to or receive communications regarding the employer's political and religious opinions. The statute thus does not implicate the First Amendment at all. But even if it did, SB 399 is still constitutional as a valid protection of a captive audience. Plaintiff has therefore failed to allege a plausible First Amendment claim and the lower court's dismissal can be affirmed on that alternative basis.

## ARGUMENT

## I. THE LOWER COURT PROPERLY DISMISSED THE CASE BECAUSE PLAINTIFF HAS NOT ESTABLISHED STANDING

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

15

favorable judicial decision." *Id.* This Court applies a three-part test drawn from *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to determine if a plaintiff has established pre-enforcement standing. *See Peace River LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (adopting the *Driehaus* test). Under this test, "[a] plaintiff has a sufficient injury for a pre-enforcement challenge" when they establish (1) that they have "'an intention to engage in a course of conduct arguably affected with a constitutional interest,'" (2) that is "'proscribed by a statute,'" and (3) that "'there exists a credible threat of prosecution thereunder.'" *Kumar v. Koester*, 131 F.4th 746, 752 (9th Cir. 2025) (quoting *Driehaus*, 573 U.S. at 158-59).

Plaintiff has not adequately alleged standing under this test because it has not established it intends to engage in a course of conduct proscribed by SB 399 or that it faces a realistic threat of enforcement. According to its complaint, plaintiff is a nonprofit that "engages in research and communication related to public policy, primarily focused on the areas of education reform, workplace freedom, government transparency, and governance." ER-81; *see also* ER-86 ("creating legislative and regulatory proposals is one of [plaintiff's] principal purposes"); ER-86 (plaintiff "publishes policy research and trains local elected officials"). Plaintiff "regularly conducted mandatory staff meetings at which the organization's views on issues of legislation, regulation, and the decision to join a labor union, among other things were discussed." ER-81; *see also* ER-86. It wishes to continue

16

hosting such meetings because they are "important for the functioning" of plaintiff's organization. ER-81; *see also* ER-81, ER-87. In light of these allegations, the required meetings plaintiff wishes to hold implicate two of the exemptions within SB 399.

First, plaintiff's desired mandatory meetings implicate the job-duties exemption in SB 399. Under this exemption, an employer may require an employee to attend a meeting or receive a communication when the employer is "communicating to its employees any information that is necessary for those employees to perform their job duties." Cal. Labor Code § 1137(g)(2). As the legislative history states, SB 339 was not meant "to limit an employee from completing their job duties as assigned or as reasonably expected to arise, including in the context of positions that include a political element." SER-46. Indeed, the legislative history specifically addressed a hypothetical akin to the situation presented here: "an employee of a city council, for example, who may need to staff a city council meeting that includes topics of discussion that may touch on politics or religion but that are outside the immediate purview of their specific job duties is not the type of incident contemplated by this legislation." *Id.* The legislative analysis states that such a situation is "arguably exempted" from SB 399 under the job-duties exemption because it involves information necessary for an employee to perform their duties. *Id.*

17

Just like the city council meeting in the legislative history, the meetings plaintiff wishes to host implicate the job-duties exemption, even if an employee may not work on a specific policy matter being discussed. Indeed, plaintiff's complaint suggests as much when it says that "it is important for the functioning of CPC to communicate about political matters" and that meetings on the topics related to plaintiff's policy work "improve staff morale and team cohesion and enable staffers not working on a specific policy-related matter to express their ideas or new perspective on that matter." ER-87. Of course, the precise applicability of the job-duties exemption can only be determined based on the specifics of a meeting at issue and the attending employees. But plaintiff's allegations indicate that the meetings they seek to host implicate that exemption. If those meetings do fall within the scope of that exemption, then plaintiff may require that employees attend such meetings or impose discipline on employees who refuse to do so.

Second, plaintiff's desired required meetings implicate the political-organization exemption. SB 399 exempts a "political organization" that "requir[es] its employees to attend an employer-sponsored meeting or to participate in any communications with the employer . . . the purpose of which is to communicate the employer's political tenets or purposes." Cal. Labor Code § 1137(h)(2). The political-organization exemption, like the job-duties exemption,

18

is fact-specific in that it only applies when an employee is required to attend a meeting where the employer communicates about its "political tenets or purposes." While it is thus premature to determine whether any specific hypothetical future meeting falls within the scope of the political-organization exemption—given the lack of specific facts to apply the law to at this time—the mandatory meetings that plaintiff alleges it wishes to host implicate this exemption as well.

This Court "look[s] to California principles of statutory construction" when "interpreting the California statute at issue here." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 (9th Cir. 2005). "These principles require [the Court] to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law' by looking first to the words of the statute." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 1043 (2004)). This Court will "utilize the ordinary meaning of words in a statute unless the Legislature has defined the terms." *Id.* (citing *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 998 (1990)); *see also, e.g.*, *People v. Blackburn*, 61 Cal. 4th 1113, 1123 (2015) (in the absence of a statutory definition, California courts give the words in a statute "their usual and ordinary meaning, while construing them in light of the statute as a whole and the statute's purpose." (citation omitted)). "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the

19

dictionary definition of that word." *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal. 4th 1111, 1121-22 (2005).

For purposes of analyzing plaintiff's standing, it suffices that plaintiff likely constitutes a "political organization" for purposes of SB 399 because its primary purpose is policy formulation and advocacy work. Neither SB 399 nor the Labor Code includes a specific definition of "political organization." The plain, commonsense meaning of "political" is relating to the conduct of government, government policy, and government administration. *See, e.g.*, *Political*, Black's Law Dictionary (12th ed. 2024) (defining "political" as "[o]f, relating to, or involving politics; pertaining to the conduct of government").[6] Per its allegations, plaintiff "engages in research and communication related to public policy, primarily focused on the areas of education reform, workplace freedom, government transparency, and governance." ER-81; *see also* ER-86 ("creating legislative and regulatory proposals is one of [plaintiff's] principal purposes"); ER-86 (plaintiff "publishes policy research and trains local elected officials"). Since plaintiff's primary purpose is engaging in advocacy around government affairs,

---

[6] *See also, e.g.*, "*Political*," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/political (defining "political" as "of or relating to government, a government, or the conduct of government; of, relating to, or concerned with the making as distinguished from the administration of governmental policy" and "of, relating to, involving, or involved in politics and especially party politics") (last accessed March 5, 2026).

policy, and administration, it likely falls within the scope of the plain, commonsense meaning of "political organization."

Consequently, the required meetings plaintiff alleges it wishes to hold implicate the political-organization exemption as well. At these mandatory meetings, plaintiff wishes to "speak to its employees about the very subject matter of the organization's mission." ER-82. Plaintiff further alleges that at such required meetings, it intends to discuss political topics that relate to the matters it engages in policy and advocacy work on. *Compare* ER-82, ER-86 (listing areas plaintiff is engaged in) *with id.* ER-86 (listing topics plaintiff has discussed at meetings). Of course, it is not possible to say categorically whether these mandatory meetings are exempt in the abstract. But since plaintiff's allegations implicate the political-organization exemption (as well as the job-duties exemption), plaintiff has not established an intent to engage in a course of conduct within the scope of SB 399 or that it faces a realistic threat of enforcement under that statute. It therefore lacks standing for its pre-enforcement challenge, as the lower court properly concluded below.

In its opening brief, plaintiff solely argues that it has standing because it is not a political organization under SB 399. *E.g.*, Opening Br. at 31. As a threshold matter, the question before this Court is not whether plaintiff is or is not a "political organization" under SB 399; rather, it is whether plaintiff *has standing* to

21

bring a pre-enforcement challenge to SB 399. In order to have standing, plaintiff must establish that it intends to engage in a course of conduct within the scope of SB 399 and that it faces a realistic threat of prosecution thereunder. Determining whether plaintiff has made that showing does not necessarily require this Court to determine whether plaintiff and the required meetings it wishes hold categorically are, or are not, exempt under the statute. Rather, the exemptions under SB 399 are relevant insofar as they indicate that plaintiff has not established that the conduct it wishes to engage in falls within the scope of SB 399.

To the extent that qualification as a political organization under SB 399 is relevant to the standing inquiry, plaintiff's statutory construction arguments are not persuasive. Plaintiff primarily contends that the term "political organization" as used in SB 399 should be interpreted as limited to solely partisan electoral groups, pointing to statutory definitions of "political organization" in separate statutory codes, such as the Revenue and Taxation Code or the Education Code. *See* Opening Br. at 32-34. But under California principles of statutory interpretation, different statutes "should be construed together *only if* they stand in pari materia." *People v. Knowles*, 105 Cal. App. 5th 757, 767 (2024) (quoting *Walker v. Superior Court*, 47 Cal. 3d 112, 124 n.4 (1988)) (emphasis added). Statutes are *in pari materia* "when they relate to the same person or thing, to the same class of

22

person[s] [or] things, or have the same purpose of object." *Id.* (quoting *Walker*, 47 Cal. 3d at 124 n.4) (alterations in original).

The Labor Code is not *in pari materia* with the Revenue and Taxation Code, the Education Code, or the Code of Judicial Ethics under California case law, as the lower court properly recognized. Statutes that "do not have the same object or purpose and were enacted for different ends" are not *in pari materia*. *Knowles*, 105 Cal. App. 5th at 767. For instance, the California Court of Appeal has held that a Labor Code statutory provision was not *in pari materia* with provisions in the Food and Agricultural Code and the Business and Professions Code because the statutory provisions were not related, did not have the same purpose, and touched on different legal questions and issues. *See Neville v. County of Sonoma*, 206 Cal. App. 4th 61, 76 (2012). So, too, here. SB 399 concerns the rights of workers not to be compelled to listen to their employer's opinion on politics or religion. The proposed analogues plaintiff cites have nothing to do with employee's rights or labor conditions; instead, they govern when organizations are tax exempt, when student organizations may meet on college campuses, and when judges should avoid involvement with political organizations to ensure impartiality. None of those situations have anything whatsoever to do with the issues confronted by SB 399.

23

This conclusion is not altered by plaintiff's citations (at 36-37) to U.S. Supreme Court cases. Indeed, plaintiff's reliance on such cases is particularly inapposite here. This case involves a *California* statute, and in interpreting a California statute, a court must "look to *California* principles of statutory construction." *Credit Suisse*, 400 F.3d at 1126 (emphasis added). While the cases plaintiff cite may provide guidance on how to interpret a federal statute, they do not provide any guidance on *California* principles of statutory construction. They are thus of little utility in addressing the question before the Court here.

Next, plaintiff attempts to analogize SB 399's use of "political organization" in the political-organization exemption to SB 399's use of the phrase "religious corporation, entity, association, educational institution, or society" in the parallel religious exemption. Opening Br. at 38. Plaintiff contends that since the terms in the religious exemption "each have distinct, legally recognized meanings," that "confirms that the Legislature meant 'political organization' in its established, technical sense." *Id.* But in so arguing, plaintiff ignores critical language in the religious exemption: that exemption *specifically cites to* statutory sections that give those phrases any "distinct, legally recognized meanings," *id.*, that they have. *See* Cal. Labor Code § 1137(h)(1) (citing 42 U.S.C. § 2000e-1(a), Cal. Gov. Code § 12926(d), and Cal. Labor Code § 98.6(d)). By expressly citing other statutory sections, the Legislature made clear that it was tying the scope of that exemption to

24

those other statutory sections. In contrast, the political-organization exemption does *not* reference any other statutory code. The fact that the Legislature did not link the scope of the political-organization exemption to other statutory definitions establishes that it did not intend to do so.

Plaintiff also contends that the district court's interpretation of "political organization" is "unworkable" since it "sweeps in private, for-profit corporations that lobby regulators, submit comments on proposed rules, or advocate for particular legislation." Opening Br. at 39-40. But affirming the decision below would not pose such problems, because this Court need not determine the precise scope of the exemption at this time. In light of the plain language of "political organization," whatever the outer bounds of the statutory term are, plaintiff is likely comfortably within them. And all that matters for purposes of standing is that *plaintiff* is likely within the definition of "political organization"—and thus that the required meetings plaintiff wishes to host implicate the exemption. Affirming the lower court's ruling that plaintiff lacks standing would thus not result in an unworkable legal regime.

In addition to plaintiff's own arguments, plaintiff's *amici* argue that the lower court's decision should be reversed because plaintiff has advanced an "arguable" interpretation of the statute. Not so. Whatever the precise definition and scope of the political-organization exemption may be, there is no arguable interpretation of

25

SB 399 that limits that exemption solely to organizations involved in partisan electoral politics. There is nothing in the statutory text or the legislative history that indicates the Legislature intended to adopt such a limited exemption. If anything, these tools of statutory construction point in the opposite direction. And the legislative history further supports that "political organization" is not so narrowly defined by indicating that a local political body or agency—clearly *not* partisan electoral organizations—may constitute a "political organization." ER-46-47. All of the tools of statutory construction indicate that the political-organization exemption is not limited to partisan entities engaged in electoral politics. And that is the only argument plaintiff raises as to why it could not rely on that exemption.

Finally, plaintiff's *amici* contend that plaintiff's allegations of self-censorship suffice for standing. But "self-censorship alone is insufficient to show injury." *Am. Encore v. Fontes*, 152 F.4th 1097, 1114 (9th Cir. 2025) (internal quotation marks and citations omitted). For "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) ("Although Lopez alleges that his speech was chilled . . . , self-censorship alone is insufficient to show injury."). Ultimately, "[t]he self-censorship door to standing does not open for every plaintiff." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th

Cir. 2003).  Instead, a plaintiff must "arguably fall[] within the statute's reach."  *Id.* As explained above, plaintiff's allegations implicate two of SB 399's exemptions, and plaintiff has therefore failed to establish the required meetings it wishes to hold fall within the scope of SB 399.  Given the specific allegations here and the pre-enforcement nature of this challenge, plaintiff has not established standing.

## II.  IN THE ALTERNATIVE, THE DECISION BELOW CAN BE AFFIRMED FOR FAILURE TO STATE A CLAIM

Even if the lower court erred in concluding that plaintiff lacked standing, this Court should nonetheless affirm on the basis that plaintiff's complaint fails to state a viable First Amendment challenge.  *See United States v. Campbell,* 291 F.3d 1169, 1172 (9th Cir. 2002) (this Court "may affirm on any basis finding support in the record").

### A.    SB 399 Is Not Unconstitutional Under the First Amendment

SB 399 does not violate the First Amendment.  It is axiomatic that while the First Amendment protects one's right to speak, it does not guarantee one the right to force others to listen to that speech.  SB 399 does not prohibit or require any speech, but rather only prevents an employer from compelling unwilling employees to listen.  Since that does not implicate an employer's First Amendment rights to begin with, SB 399 is constitutional.  But even if SB 399 were subject to First Amendment scrutiny, it is constitutional as a protection of a captive audience.

27

### 1. The First Amendment Does Not Include the Right to Compel an Audience to Listen

The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). The First Amendment thus plays a key role "in affording the public access to discussion, debate, and the dissemination of information and ideas." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 541 (1980) (citation omitted).

"The right to free speech, however, 'is not absolute.'" *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). It "does not guarantee a speaker the most effective means of communication of his message." *Galena v. Leone*, 638 F.3d 186, 204 (3d Cir. 2011). It "does not guarantee a right to the most cost-effective means" of communication. *Sign for Jesus v. Town of Pembroke*, 977 F.3d 93, 107 (1st Cir. 2020) (citation omitted). It "does not guarantee a speaker an absolute right to

28

actual conversation with . . . his audience in every circumstance." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

And, as relevant here, the First Amendment does not guarantee the right to force an audience to listen. The Supreme Court has held that, on the contrary, "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970). "While the freedom to communicate is substantial, 'the right of every person to be let alone must be placed in the scales with the right of others to communicate.'" *Hill v. Colorado*, 530 U.S. 703, 718 (2000) (quoting *Rowan*, 397 U.S. at 736). Thus, the Court has "repeatedly recognized the interests of unwilling listeners" *not* to listen. *Id.* at 718; *see also id.* at 716 ("The unwilling listener's interest in avoiding unwanted communication has been repeatedly identified in our cases."). This freedom from unwanted communications is "an aspect of the broader 'right to be let alone' that one of our wisest Justices characterized as 'the most comprehensive of rights and the right most valued by civilized men.'" *Id.* at 716-717 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)).

### 2. SB 399 Is Not Subject to First Amendment Scrutiny

SB 399 does not implicate First Amendment scrutiny because it does not regulate speech. Instead, it solely protects employees from being compelled to *listen* to an employer's speech that is unrelated to their job duties. Because

employers do not have a First Amendment right to compel their employees to serve as an unwilling audience, SB 399 does not trigger First Amendment scrutiny.

On its face, SB 399 does not regulate speech. Under SB 399, an employer "shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer . . . the purpose of which is to communicate the employer's opinions about religious or political matters." Cal. Labor Code § 1137(c). The action that triggers an employer's exposure to sanctions under SB 399 is "subject[ing] or threaten[ing] to subject an employee to discharge, discrimination, retaliation, or any other adverse action." *Id.* That is conduct, not speech. Were it otherwise, the many state and federal laws that limit an employer's ability to impose adverse employment actions on an employee, such as anti-discrimination laws or protections for whistleblowers, would also regulate expressive activity.[7]

---

[7] *See, e.g.*, 5 U.S.C. § 2302(b)(8) (public employer may not "take or fail to take, or threaten to take or fail to take, a personnel action" due to employee's whistleblowing activities); 18 U.S.C. § 1514A(a) (companies may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" due to whistleblowing activities); 42 U.S.C. § 2000e-2(a)(1) (unlawful for an employer "to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

(continued…)

30

At the same time, SB 399 does not prohibit an employer from expressing its opinion on any subject, including religious and political matters, to its employees or expose an employer to liability for such communicative activities. The statute nowhere says an employer may not hang fliers or posters, send out mailers, issue press releases, distribute handouts, maintain websites, give interviews, purchase advertisements, email its employees, or hold meetings to express its opinions on any topic, including religious or political matters. Indeed, the legislative history is clear on this point: the Legislature had no intent to limit *any* speech by employers. *See* SER-21, SER-22, SER-37, SER-49. As the law's author explained, under SB 399, "employers are still free to discuss their religious, political, and anti-union views with workers." SER-21; *see also* SER-37, SER-49. All they may not do is punish an employee who refuses to listen.

Ultimately, SB 399 "neither limits what [employers] may say nor requires them to say anything." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006). Employers "remain free under the statute to express whatever views" they wish on any topic they wish. *Id.* Instead, SB 399 only "affects what [employers] must [not] *do*"—punish or retaliate against an employee—"not what they may or may not *say*." *Id.* (emphasis in original). SB

---

employment, because of such individual's race, color, religion, sex, or national origin").

399 therefore does not regulate speech.  It solely prevents an employer from using its power over its employees to *compel listening.*  And employers have no First Amendment right to force their employees to listen.  *See supra* at 28-29.

Nor is the notion that SB 399 may have an impact on speech sufficient for it to trigger First Amendment scrutiny.  On the contrary, First Amendment scrutiny is not triggered simply because a law has *some* impact on speech.  *E.g.*, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705-06 (1986).  Courts "have not traditionally subjected every" law "to 'least restrictive means' scrutiny simply because each particular [law] will have some effect on the First Amendment activities of those subject to sanction."  *Id.* at 706.  After all, "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities."  *Id.*  Instead, as this Court has emphasized, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (citation omitted).

Courts have thus recognized that regulations of conduct, such as laws prohibiting employment discrimination and retaliation, do not trigger heightened First Amendment scrutiny, even if they have an incidental impact on speech.  "Congress, for example, can prohibit employers from discriminating in hiring on the basis of race," and "[t]he fact that this will require an employer to take down a

32

sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Rumsfeld*, 547 U.S. at 62; *see also Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (Supreme Court has "rejected the argument that Title VII infringed employers' First Amendment rights"). Just like numerous other laws prohibiting retaliation against employees or regulating employee discipline, SB 399 has only an incidental effect on speech. This sort of incidental impact on speech does not make SB 399 subject to First Amendment scrutiny.

Nor is this a case where the Legislature acted out of an improper desire to silence or suppress speech. The Legislature was clear that it was not seeking to silence any speech, but rather to protect employees from being forced to listen to an employer's unwanted speech on political or religious matters unrelated to their job. *See supra* at 5-6, 31. Had the Legislature enacted SB 399 out of an intent to specifically silence certain viewpoints or messages it disliked, the First Amendment certainly would have been implicated—just as it was in *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024), where Florida enacted a law to "protect Floridians from [] dangerous and offensive speech— whether they wish to hear it or not." *Id.* at 1276. But SB 399 is not such a law. Instead, SB 399 solely protects those employees who do not want to listen, without interfering with employer communications with employees who do. And because

33

SB 399 does not prohibit any speech, but rather prevents only compelling unwilling employees to listen, it does not trigger First Amendment scrutiny at the threshold.

### 3. Even if SB 399 Does Regulate Speech, It Is Permissible as Protection of an Unwilling Audience

Even if SB 399 were a regulation of speech, it is constitutional as a protection of a captive audience. The Supreme Court has recognized that a State may, consistent with the First Amendment, restrict speech when "the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975). While "an offer by one to communicate and discuss information with a view to influence the other's action [is] not regarded as aggression or a violation of that other's rights," if "the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free." *Hill*, 530 U.S. at 717 (citation omitted).

Courts have thus held that a state may regulate speech when an unwilling audience lacks the capacity to reasonably avoid undesirable speech. For instance, "[p]ublic transit riders are, by necessity, a 'captive audience.'" *Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165, 1170 (9th Cir. 2015) (citing *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302 (1974)). Public transportation is "a

34

practical necessity for millions in our urban centers," and riders "of necessity become commuters and at the same time captive viewers or listeners." *Lehman*, 418 U.S. at 307 (Douglas, J., concurring). The Supreme Court and this Court have thus held that a state can permissibly regulate the content of advertisements on public transit to further "the right of the commuters to be free from forced intrusions on their privacy." *Id.*; *see also, e.g.*, *Am. Freedom Defense Initiative*, 796 F.3d at 1170. So, too, may the state regulate speech at healthcare facilities to protect the "well-being of the patient held 'captive' by medical circumstances,"[8] or the speech on school premises to protect "students who constitute a captive audience."[9]

Just like public transit riders, patients, and students, employees are a "captive audience" in the workplace. Indeed, the degree of compulsion to which employees may be subject is at least as strong as that in other cases that have upheld speech restrictions as necessary to protect freedom of conscience. Most of us spend a significant portion of our adult lives in a workplace setting and depend on our jobs for economic security, the ability to obtain life's necessities, and even our families'

---

[8] *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 768 (1994); *see also Hill*, 530 U.S. at 717.

[9] *Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1049 (2d Cir. 1979); *see also, e.g.*, *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 968 (9th Cir. 1999); *Martin v. Parrish*, 805 F.2d 583, 586 (5th Cir. 1986).

access to health care.  The threat of losing those benefits is not something most workers can easily ignore.  Forced to choose between, on one hand, honoring one's religious or political beliefs and, on the other, the ability to pay the rent next month or take a sick child to the doctor, many may choose to sacrifice cherished beliefs for financial security for themselves and their families.  But the First Amendment does not require that an employee "'undertake [such] Herculean efforts to escape'" their employer's political or religious opinions.  *Hill*, 530 U.S. at 716 (citation omitted).

## CONCLUSION

For the foregoing reasons, if this Court holds the lower court abused its discretion in dismissing this case under Rule 41(b), it should nonetheless affirm the lower court's grant of defendant's motion to dismiss.


Dated:  March 5, 2026                    Respectfully submitted,

                                         *s/ Kristin Liska*
                                         _____


                                         Rob Bonta
                                           *Attorney General of California*
                                         Thomas S. Patterson
                                           *Senior Assistant Attorney General*
                                         Anya M. Binsacca
                                           *Supervising Deputy Attorney General*
                                         KRISTIN A. LISKA
                                           *Deputy Attorney General*


36

## STATEMENT OF RELATED CASES

The following related case is pending:

*California Chamber of Commerce v. Bonta*, No. 25-6874.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-6173

I am the attorney or self-represented party.

**This brief contains** | 8,372 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Kristin Liska | **Date** | March 5, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8**                                                                  *Rev. 12/01/22*